

Revised 03/06 WDNY

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NEW YORK

### FORM TO BE USED IN FILING A CIVIL COMPLAINT IN FEDERAL COURT
### (Non-Prisoner Context)

All material filed in this Court is now available via the **INTERNET**. See **Pro Se Privacy Notice** for further information.

### 1. CAPTION OF ACTION          **18 CV 6229** CJS

**A.      Full Name of Plaintiff: NOTE:** *If more than one plaintiff files this action and seeks in forma pauperis status, each plaintiff must submit an in forma pauperis application or the only plaintiff to be considered will be the plaintiff who filed an application.*

Jason Balkum

-vs-

**B.      Full Name(s) of Defendant(s) NOTE:** *Pursuant to Fed.R.Civ.P. 10(a), the names of all parties must appear in the caption. The court may not consider a claim against anyone not identified in this section as a defendant.* Add a separate sheet, if necessary.

1.  Gullina Development Corp.          4. _____
2.  _____          5. _____
3.  _____          6. _____

### 2. STATEMENT OF JURISDICTION, VENUE and NATURE OF SUIT
*All of these sections MUST be answered*

*Identify the basis for federal Court jurisdiction over your claim, such as that the United States government is a party to the action, all the parties reside in different states and therefore you claim diversity jurisdiction, or the claim presents a federal question or arises under federal law.*

A. Basis of Jurisdiction in Federal Court: The Court has jurisdiction pursuant to 28 U.S.C. Section 1331. The Court has Supplemental jurisdiction pursuant to pursuant to 28 U.S.C. Section 1367 (a)

*State why the Western District of New York is the proper venue for this action, such as that your claim arises in or the defendant resides in the 17 westernmost counties of New York State.*

B. Reason for Venue in the Western District: _____

*Identify the nature of this action, such as that it is a civil rights claim, a personal injury or personal property (tort) claim, a property rights claim, or whatever it is.*

C. Nature of Suit: _____

## 3. PARTIES TO THIS ACTION

**PLAINTIFF'S INFORMATION** NOTE: *To list additional plaintiffs, use this format on another sheet of paper.*

Name of First Plaintiff: Jason Balkum

Present Address: 468 Tremont Street

Name of Second Plaintiff: N/A

Present Address:

**DEFENDANT'S INFORMATION** NOTE: *To list additional defendants, use this format on another sheet of paper.*

Name of First Defendant: Gallina Development Corporation

Official Position of Defendant (if relevant): Business

Address of Defendant: 1890 South Winton Road, Suite 100

Rochester, N.Y. 14618

Name of Second Defendant: N/A

Official Position of Defendant (if relevant):

Address of Defendant:

Name of Third Defendant: N/A

Official Position of Defendant (if relevant):

Address of Defendant:

## 4. PREVIOUS LAWSUITS IN STATE AND FEDERAL COURT

A.   Have you begun any other lawsuits in **state or federal court** dealing with **the same facts involved in this action?**

Yes____   No ✓

If Yes, complete the next section. NOTE: *If you have brought more than one lawsuit dealing with the same facts as this action, use this format to describe the other action(s) on another sheet of paper.*

1.   Name(s) of the parties to this other lawsuit:

Plaintiff(s):

Defendant(s): _____ *N/A* _____

2. Court (if federal court, name the district; if state court, name the county): *N/A* _____

3. Docket or Index Number: _____ *N/A* _____

4. Name of Judge to whom case was assigned: _____ *N/A* _____

5. The approximate date the action was filed: _____ *N/A* _____

6. What was the disposition of the case?

    Is it still pending? Yes____ No ✓

      If not, give the approximate date it was resolved._____

    Disposition (check those statements which apply):

    _____ Dismissed (check the statement which indicates why it was dismissed):

        _____ By court *sua sponte* as frivolous, malicious or for failing to state a claim upon which relief can be granted;

        _____ By court for failure to prosecute, pay filing fee or otherwise respond to a court order;

        _____ By court due to your voluntary withdrawal of claim;

    _____ Judgment upon motion or after trial entered for

        ____ plaintiff
        ____ defendant.

## 5. STATEMENT OF CLAIM

**Please note** that it is not enough to just list the ground(s) for your action. You **must** include a statement of the facts which you believe support each of your claims. In other words, just tell the story of what happened and do not use legal jargon.

**Fed.R.Civ.P. 8(a)** states that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "The function of pleadings under the Federal Rules is to give fair notice of the claim asserted. Fair notice is that which will enable the adverse party to answer and prepare for trial, allow the application of res judicata, and identify the nature of the case so it may be assigned the proper form of trial." Simmons v. Abruzzo, 49 F.3d 83, 86 (2d Cir. 1995).

**Fed.R.Civ.P. 10(b)** states that "[a]ll averments of claim ... shall be made in numbered paragraphs, the contents of each of which shall be limited as far a practicable to a single set of circumstances."

**A. FIRST CLAIM:** On (*date of the incident*) _____,

defendant (*give the **name and (if relevant) the position held** of **each defendant** involved in this incident*) _____

_____

_____

did the following to me (*briefly state what each defendant named above did*): _____

_____

_____

_____

_____

_____

_____

_____

The federal basis for this claim is: _____

_____

State briefly **exactly** what you want the Court to do for you. *Make no legal arguments and cite no cases or statutes*:

_____

_____

_____

**B.  SECOND CLAIM:**  On (*date of the incident*) _____,

defendant (*give the name and (if relevant) position held of each defendant involved in this incident*) _____

_____

_____

did the following to me (*briefly state what each defendant named above did*): _____

_____

_____

_____

_____

_____

_____

The federal basis for this claim is: _____

_____

State briefly **exactly** what you want the Court to do for you. *Make no legal arguments and cite no cases or statutes*:

_____

_____

**If you have additional claims, use the above format to set them out on additional sheets of paper.**

4

## 6. SUMMARY OF RELIEF SOUGHT

*Summarize the relief requested by you in each statement of claim above.*

_____

_____

_____

_____

_____

Do you want a **jury trial?** Yes ____ No ____

**I declare under penalty of perjury that the foregoing is true and correct.**

Executed on ___3/20/18___
           (date)

**NOTE:** *Each plaintiff must sign this complaint and must also sign all subsequent papers filed with the Court.*

_____

_____

                                    Signature(s) of Plaintiff(s)

5

In The United States District Court
for the Western District of New York

Jason Balkum,

Plaintiff

Civil Action No:
**COMPLAINT**
**JURY TRIAL DEMANDED**

v.

Gallina Development Corporation.

Defendants

---

## 1. INTRODUCTION

Plaintiff Jason T. Balkum, appearing pro se, bring this complaint against Gallina Development Corporation (Gallina Development), and allege upon personal knowledge as to himself as to his own acts, and as to all other matters upon information and belief, as follows:

## II. NATURE OF THE ACTION

1. Plaintiff Jason T. Balkum, bring this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. section 2000, *et. Seq;* and the New York Human Rights Law, 15 N.Y. Executive Law sections 291 *et. seq;* for compensatory damages and punitive damages arising from the acts of employment discrimination, racial discrimination, and hostile workplace harassment against me by the Gallina Development Corporation.

## III. PARTIES

2. Plaintiff Jason Balkum is an African-American male citizen and resident of the State of New York, who has been injured by the acts and practices described herein.

1.

3. Defendant Gallina Development Corporation is a private company in the State of New York, with a principle place of business located at 1890 South Winton Road Rochester, New York 14649.

## IV. JURISDICTION AND VENUE

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. section 1331. The Court has supplemental jurisdiction over Plaintiff's related claims arising under New York State law pursuant to 28 U.S.C. section 1367(a).

5. Venue is proper in this district pursuant to 28 U.S.C. section 1391(b) because the events giving rise to this action, including employment practices alleged herein, occurred in this district.

## GENERAL ALLEGATIONS

6. In July of 2017, Plaintiff Jason T. Balkum, formerly a temporary employee that had been assigned to work at a job site of the Defendant, filed a charge of discrimination with the EEOC alleging violations of Title VII by the Defendant.

7. All conditions precedent to the institution of this lawsuit have been fulfilled. Specifically, on December 21, 2018, the EEOC issued plaintiff a Right To Sue Letter in this matter (See Exhibit copy of Right To Sue Letter dated December 21, 2018).

## V. FACTUAL ALLEGATIONS

8. There are very few black individuals working as direct hires as construction laborers for Gallina Development Corporation. In addition there are very few, if any individuals with criminal records working for the Gallina Development Corporation.

2.

9.  Upon information and belief, the Gallina Development Corporation has come under scrutiny for having the illegal hiring practice of refusing to hire African-Americans and individuals with criminal records as direct hires with Gallina Development Corporation to work as construction laborers on its job sites.

10. Upon information and belief, as a result the Gallina Development Corporation entered into an agreement with a temporary staffing agency named the Rochester Business Alliance Staffing (RBA Staffing) that would enable Gallina Development to allow African-Americans and individuals with criminal records to be employed on Gallina Development's job sites as construction laborers through a program known as the one job alliance which was created to help individuals facing employment discrimination because of having criminal records obtain employment.

11. Upon information and belief, the one job initiative program allows the Defendant to avoid further scrutiny for its hiring practices by allowing blacks and individuals with criminal records to work as construction laborers on its job sites, and at the same time enable the Defendant to continue to refuse to hire blacks and individuals with criminal records as direct hires with the Defendant's company on its construction job sites.

12. In December of 2015, I was hired by RBA Staffing through its one job initiative program as a temporary general construction laborer to work at the former Chase Tower in downtown Rochester, New York that is being redeveloped into luxury apartments and retail stores by Gallina Development Corporation, and is now named the Metropolitan.

13. The Plaintiff's job tasks required demolition of dry wall, wooden walls, removal of pipes, removal of fixtures from ceilings, removing furniture that had been left behind on the floors from the former offices that were inside of the Metropolitan as well as other things as needed and required.

3.

14. I was told to report to a supervisor working for the Gallina Development Corporation named Brett Gaurette. Another African-American named Willie Randall was also hired by RBA Staffing to work at the Metropolitan on the same day. At the time Brett Gaurette supervised four individuals that had been hired as General Construction Laborers from temporary staffing agencies.

15. The Plaintiff, Willie Randall and a Caucasian named Mike Stubbs were from RBA Staffing, and another Caucasian named Dwayne Felong was a hire from another temporary agency now known as People Ready. Mike Stubbs had been hired by RBA Staffing to work as a temporary general construction laborer at the Metropolita in or around May of 2015. In addition to being Caucasian, Mike Stubbs is also Brett Gaurette's personal friend.

16. From the very first day that I began working there Brett Gaurette asked me "which one of you has the criminal record"? I did not answer the question. However, not a week would go by without Brett Gaurette asking me that question. Finally, one day I told him that I was the one with the criminal record.

17. After that Brett Gaurette began telling contractors who had been hired by Gallina Development Corporation to work at the Metropolitan to watch me because I had a criminal record.

18. One day in May of 2015, Mike Stubbs alleged that someone had stolen some food from him out a refrigerator, and had also stolen $10. 00 of $25.00 dollars from him.

19. Despite the fact that several of the contractors shared the same refrigerator, and also had unfettered and unsupervised access to the floor that the alleged thefts had taken place on he called a meeting consisting only of the Plaintiff, Willie Randall, Mike Stubbs, and Dwayne Felong.

4.

20. Brett Gaurette began yelling and screaming about the alleged thefts from Mike Stubbs and the Plaintiff, Willie Randall, and Dwayne Felong all just sat there and listened.

21. Then all of a sudden Brett Gaurette looked at me and started yelling "what about you J"? You don't have anything to say"? I responded that I did not have anything to say because I did not know anything about anything having been taken from Mike Stubbs.

22. Plaintiff stated that several other contractors shared the same refrigerator that Mike Stubbs kept his food in along with the fact that they also had unsupervised and unfettered access to both the refrigerator , and the floor where the thefts had allegedly taken place.

23. Plaintiff also stated that Willie Randall and Dwayne Felong had not said anything either, but that he was only addressing that question to me. Finally the Plaintiff asked him why didn't he ask any of the contractors who has unsupervised and unfettered access to the floor and the refrigerator to attend this meeting.

24. Brett Gaurette's response was that he did not supervise them and "that's why I did not call them to this meeting". After that the meeting ended. Subsequently, Brett Gaurette obtained lockers for the Plaintiff, Willie Randall, Mike Stubbs, and Dwayne Felong to keep our personal belongings in along with tools that he gave us to perform our job tasks with.

25. Then the following month in June of 2016, Brett Gaurette called another meeting alleging that Dwayne Felong had informed him that tools that we used for our job tasks were missing. Again, no one said anything.

26. Then all of a sudden Brett Gaurette and Dwayne Felong went over to the lockers, and Brett Gaurette asked *"only me"* to open my locker. Naturally several of the tools that he had gave us to perform our job tasks with were in my locker. Nevertheless (and amazingly) in an accusatory voice Brett Gaurette asked "what are those, J"?

27. I responded that those are the tools that you gave to us to do our job tasks with. That ended that. Then there were his acts of racial favoritism towards Mike Stubbs, and Dwayne Felong. For example, lunch was from 12:00 p.m. to 12:30 p.m. every day. However, every Friday Brett Gaurette allowed Mike Stubbs to leave and go to lunch at 11:30 and return at 1:00 to have lunch with his girlfriend.

28. However, if either the Plaintiff or Willie Randall returned from lunch just a few minutes late he would threaten to fire us. He also allowed Mike Stubbs and Dwayne Felong excessive absences from work and excessive tardiness without even calling in to say that they would not be coming in, or that they would be late. In fact, the situation with excessive absences from work became so bad with both Mike Stubbs and Dwayne Felong that Andrew Gallina, the owner of Gallina Development Corporation threatened to fire both Mike Stubbs and Brett Gaurette if Brett Gaurette did not put an end to it. The period of time in which Mike Stubbs was excessively absent from work can be shown from RBA Staffing payroll records, because the temporary workers did not receive pay for days missed from work.

29. However, whenever the Plaintiff or Willie Randall would miss a day of work once again Brett Gaurette would threaten to fire us. It was the same thing when it came to who he would allow to take materials that were being discarded home from the job site.

30. For example, he would allow Mike Stubbs to take the wood and two by fours that we would remove from the walls almost every day to sell to other individuals. He would also allow Mike Stubbs to take copper coiling that we removed from the radiators after we cleaned them.

31. However, if the Plaintiff or Willie Randall wanted to take something he would always say "that's Gallina property, trash it" or in the case of the copper coils he would say that the copper had to be kept and stored in a room on the 22nd floor.

6.

32. Brett Gaurette also expected the Plaintiff and Willie Randall to clean up the dry wall or wooden debris left on the floors by Mike Stubbs and Dwayne Felong. The Plaintiff and Willie Randall would always do this without complaint.

33. One day Brett Gaurette fired Willie Randall, because he refused to clean up dry wall, wooden debris, and pipes that Dewayne Felong had left on the floor.

34. According to Willie Randall when he returned to RBA Staffing after Brett Gaurette told him not to come back after this incident, he lodged a verbal complaint of racism against Brett Gaurette for firing him for not cleaning up Dwayne Felong's debris. RBA Staffing in return contacted the Human Resources department of Gallina Development to report Willie Randall's complaint against Brett Gaurette, but did not reprimand Brett Gaurette with respect to Willie Randall's complaint against him. I know this because Brett Gaurette was angry and complaining for having been confronted by one of Andrew Gallina's sons about Willie Randall's complaint of racism by Brett Gaurette.

35. In fact, Brett Gaurette used to brag to the predominantly white employed contractors about his repeatedly firing the African-American construction laborers who had been sent to work at the Metropolitan.

36. After Dwayne Felong quit RBA Staffing sent another African-American named Thomas Lathrop to replace Dwayne Felong at the Metropolitan. By this time, Brett Gaurette had allowed Mike Stubbs to resume leaving for lunch at 11:30 a.m. and returning from lunch at 1:00 p.m. on Fridays so that Mike Stubbs could have lunch with his girlfriend.

37. Thomas Lathrop used to call in absent from work several times on Mondays. One day Brett Gaurette told him that if he continued to call in absent on Mondays that he would be fired. However, Brett Gaurette never threatened to fire Mike Stubbs for his excessive absences from work.

7.

38. Upon information and belief, Brett Gaurette bought the Plaintiff tools, and began falsely accusing me of stealing from the contractors as a pretense to wrongfully terminate me from the Defendant's job site at the Metropolitan, because of my race and also because of my criminal record.

39. For example, one day Brett Gaurette came *"only"* to the Plaintiff and said that the contractors were complaining that their cups of coffee were allegedly being stolen from the floors that they were working on. He pointed to an empty coffee cup that was sitting on top of one of the garbage cans on the 16th floor and said that the contractors told him that their cups of coffee that were allegedly being stolen were in *"cups just like those".* The Plaintiff told Brett Gaurette that coffee was sold in cups just like that in every corner store downtown.

40. After that incident, and while were still doing demolition work on the 16th floor Brett Gaurette again came *"only"* to me and claimed that one of the contractors told him that a bowl of cereal had been stolen from the floor that they were working on. I told Brett Gaurette that I did not know anything about it. There was an empty bowl sitting on one of the radiators on the 16th floor.  Brett Gaurette stated to me that the contractors had told him that the cereal was in a bowl just like the one that was sitting on the radiator. I told Brett Gaurette that that was Mike Stubbs's bowl that he ate out of every day.

41. The camera that Brett Gaurette installed on the 16th floor was aimed at a refrigerator that was on the 16th floor which some of the contractors put their food in. Brett Gaurette would come to *"only"* the Plaintiff whenever he claimed that he was allegedly continuing to get complaints about food being stolen out of the refrigerator. However, in addition to the fact that contractors kept food in the refrigerator on the 16th floor, the refrigerator was also right next to the microwave oven that the contractors with other companies working on other floors had unfettered access to.

8.

42. The camera that Brett Gaurette installed on the 16th floor was also aimed directly at the tool room on the 1th 16th floor at that time that the temporary agency construction laborers used to get tools to perform job tasks.

43. There were still occasions when certain tools that were needed for the Plaintiff to complete or perform my job tasks would not be foreseeable to me because I would run into a situation in which I would not have the tool(s) needed to perform a certain job task, or because another one of the temporary construction laborers would be using a tool that I would need.

44. In those situations the Plaintiff would have to go to the tool room on the 16th floor to retrieve the necessary tool or tools needed to perform a job task. On each and every occasion after I would return to the floor that the temporary construction laborers were working on, Brett Gaurette would come and ask me why was I going on the 16th floor to the tool room to get tools. Therefore, I realized that in addition to watching the refrigerator that was allegedly having food stolen out of it, Brett Gaurette had also bought the camera to put on the 16th floor to aim at the tool room so that he could watch me whenever I came on the 16th floor to retrieve tools from the tool room.

45. Brett Gaurette would confront the Plaintiff several times to ask me why I was getting tools from the tool room when he had provided me with tools, I would explain to him that I needed a certain tool that he had not provided me with to perform a certain job task, or that the tool that I needed was being used by one of the other construction laborers.

46. On June 29th, 2017 after I returned from the tool room on the 16th floor from getting a tool that I needed to perform a job task, Brett Gaurette came on the floor that I was working on and began yelling and screaming at me for going to the tool room to get tools.

9.

47. I recognized Brett Gaurette's demeanor as an attempt to get me into a physical confrontation with him. As usual, however, I would calmly explain to him that if he did not provide me with the tool that I needed, or that the tool that I needed was being used by one of the other temporary construction laborers, that meant that I had to go to the tool room to get the tool that I needed.

48. Brett Gaurette became violently angry and he kicked over the tool cart that I had my tools on yelling and screaming at me "that's bullshit I gave you tools to do your job with".

49. I then asked Brett Gaurette why was he yelling and screaming at me and he made a move as if he was attempting to physically attack me, at which time I told him that if he thought that he was intimidating me he was mistaken.

50. The next day, on June 30, 2017 after I got my tool cart from the 16th floor tool room and went to the floor that I was working on, Brett Gaurette came and said that he needed to talk to me.

51. We went to the 16th floor and Brett Gaurette told me that he was sending me back to RBA Staffing. I asked him why and Brett Gaurete said "c'mon J I know more than you think I know. You're stealing food from the contractors, and you are leaving cigarette butts on the floor".

52. First of all, I never stole any food from anyone at the Metropolitan or anywhere else. Second of all, Brett Gaurette never witnessed me steal any food from anyone at the Metropolitan.

53. With respect to his allegations that I was leaving cigarette butts on the on the floor of the 16th floor, Brett Gaurette never witnessed me smoking cigarettes on the 16th floor or anywhere else, because I don't even smoke and Brett Gaurette knew that. Second of all, the camera that he had placed on the 16th floor was not even located on the side of the 16th floor where he claimed that cigarette butts had been put out on, and therefore Brett Gaurette would have never observed me on camera anyway allegedly putting out cigarette butts on the floor.

54. However, there were cigarette butts put out on all of the floors that the predominantly white contracting crews were working, and Brett Gaurette never complained about that.

55. Furthermore, Brett Gaurette would personally witness the white contractors smoking cigarettes down in the dock area and once again he would say nothing. In fact, the white contractors had left so many cigarette butts on the floor of the dock area that Andrew Gallina ordered him to have the dock floor swept every day by a black temporary construction laborer named James Crawford from People Ready temporary agency.

56. Mike Stubbs, Brett Gaurette's caucasian friend  smoked all over the building without any complaint from Brett Gaurette.  In any event, the security cameras down in the dock area can confirm that the white contractors smoked on the dock all of the time, and that Brett Gaurette would sometimes witness them doing so without any consequences to them or without  any complaints from Brett Gaurette  to the companies that they worked for about them doing so.

57. I went back to RBA Staffing, and like Willie Randall before me I lodged a verbal racial discrimination and employment discrimination complaint with them against Brett Gaurette. I informed RBA Staffing that Brett Gaurette   sent me back to RBA Staffing by falsely accusing me of stealing food from the white contractors, and also by falsely accusing me of putting cigarette butts out on the floor even though he knew that I don't smoke.

58. In fact, when Brett Gaurette attempted to get me into a fight with him allegedly about me going to the tool room to get tools, that confirms and corroborates that he knew that he was falsely accussing me of stealing food from the white contractors as a pretense to conceal that his real reasons for terminating me from the temporary construction laborer position at the Metropolitan was motivated by racism, and motivated by him knowing that I have a criminal record.

59. Specifically, the only way that Brett Gaurette would have been able to repeatedly confront me about going to the tool room on the 16th floor to get tools, would have been from seeing me doing so on the camera that he had aimed at both the refrigerator and the tool room on the 16th floor.

60. Therefore, the facts that have been recited by show that Brett Gaurette would have been able to observe me stealing food from the refrigerator on the same camera that he had aimed at the tool room, and that Brett Gaurette knew that he was falsely accusing me of stealing food from the white contractors.

61. According to RBA Staffing, they were going to contact the defendant's Human Resource Department to speak with them about the actions of Brett Gaurette. If they did, then once again the defendant continued an established pattern of disregarding Brett Gaurett's blatant display of racism towards temporary black construction laborer's. Specifically, just as the defendant did not subject Brett Gaurette to any disciplinary action for having terminated Willie Randall although the defendant knew that Brett Gaurette's reason for terminating Willie Randall had been based on racism, the defendant also did not subject Brett Gaurette to any disciplinary reason for terminating me because the defendant knew that Brett Gaurette's reasons for having done so were false and made on a pretense to conceal that his reasons for having terminated me were based on racism, and discrimination against me for having a criminal record.

12.

62. In my case,  if RBA Staffing contacted the defendant's Human Resource department about the Plaintiff's verbal complaint of racism by Brett Gaurette the defendant did not subject Brett Gaurette to any employee disciplinary action with respect to my complaint, although they were clearly aware that Brett Gaurette's grounds for having terminated the Plaintiff from the defendants job site at the Metropolitan  were false and  pretextual,   and therefore  based  on  both  racism,  and discrimination against me because I have a criminal record,  just as the defendant was aware that Brett Gaurette had   terminated Willie Randall from its construction job site at the Metropolitan  based on racism.

63.  Brett Gaurette never told the defendant that the Plaintiff had been allegedly stealing food from the white contractors or that the Plaintiff had been allegedly putting cigarette butts out on the 16th floor or any other floor in the Metropolitan prior to terminating me on June 30th, 2017,  because if he would have then the defendant would have terminated me, or authorized him to terminate me for doing so long prior to the time that Brett Gaurette terminated me from the defendants job site at the Metropolitan.

64. Likewise, Brett Gaurette had never filed any complaints with RBA Staffing alleging that the Plaintiff had allegedly been stealing food from the contractors or putting cigarette butts out on the 16th floor or any other floor in the Metropolitan, prior to the day that he terminated the Plaintiff from the defendant's job site at the Metropolitan on June 30th, 2017, because if he would have then RBA Staffing would have terminated me before June 30th, 2017.

65. Since the time that Brett Gaurette terminated the Plaintiff from the defendant's job site under a pretext, he has been violent verbal confrontations with other African-American temporary workers named Chas Patterson from rba Staffing, and an individual named Terrance from People Ready Staffing.

13.

66. The incidents of violent verbal confrontations between Brett Gaurette with two other black temporary agency construction laborers since the time that he terminated me from the defendants job site at the Metropolitan shows an established pattern of behavior of on the part of Brett Gaurette of getting involved in violent confrontations with only black temporary agency employees being sent by temporary agencies to work at the defendant's job site at the Metropolitan.

67. Specifically, Brett Gaurette has never gotten into any verbal or near physical altercations with the white temporary construction laborer named Mike Stubbs, he never got into any violent verbal or near physical confrontations with DeWayne Felong, and he has never gotten into violent verbal confrontations or near physical confrontations   with any of the white employees working for the contractors at that the defendant has hired to work at the Metropolitan although he has personally witness them smoking in the Metropolitan.

68. Likewise, the facts that have been recited by me herein also shows an established pattern of behavior on the part of the defendant of knowingly acquiescing in, and of giving tacit approval to the racist behavior of Brett Gaurette, and the hostile racist work place harrassment that Brett Gaurette subjects only black men to that have been sent by temporary agencies to work as construction laborers at the defendant's job site at the Metropolitan.

69. Specifically,   just as the defendant failed to do so in the incidents involving myself and Willie Randall,   again the defendant did not subject Brett Guarette to any disciplinary measures for his actions of attempting to engage Chas Patterson and Terrance in a fight despite their knowledge of Brett Gaurette's clear established pattern of subjecting black temporary agency construction laborer's working at the defendant's job site at the Metropolitan to a hostile working environment by arbitrarily terminating them from the defendants job site at the Metropolitan, and/or by attempting to draw them in violent physical confrontations despite knowing that Brett Gaurette's actions towards black temporary workers was and is racially motivated, and in my case also motivated by my criminal record both of which are illegal.

14.

70. The plaintiff has also been wrongfully terminated from RBA Staffing as a result of the defendant's racial and employment discrimination against me because of my criminal record, because RBA Staffing terminated me based on Brett Gaurett's per se slanderous pretexts to conceal that the real reasons for his actions towards me were based on racism, and the fact that I have a criminal record despite knowing that doing so was and is illegal.

71. Specifically, after my wrongful termination from the defendant's job site at the Metropolitan I subsequently sought assistance from the Department of Social Services (DSS). DSS required the Plaintiff to provide them with a statement from RBA Staffing explaining why I was no longer employed with them.

72. RBA Staffing provided the Plaintiff with a statement alleging that the Plaintiff was no longer employed with them, because the Plaintiff's assignment with their company had ended (See Plaintiff's Exhibit  ).

73. The following facts, however, based on information and belief are going to show that on or about July 28, 2017, the defendant told  RBA Staffing to tell DSS that I am no longer employed with RBA Staffing because my assignment with them came to an end as a pretext to cover up the fact that RBA Staffing knew that the true reason for my termination by Brett Gaurette from the defendants job site at the Metropolitan was based on Brett Gaurette's per se slanderous and slanderous pretexts to try and cover up his racial discrimination against me and his employment discrimination against me based on my criminal record.

74. First of all, when RBA Staffing sent me to the defendant's job site at the Metropolitan to work as a temporary general construction laborer, RBA Staffing told me that the assignment was indefinite until the development of the building into apartments and retail was finished, and that my assignment there could last as much as three to four years if I wanted it to.

15.

75. Second of all, the white temporary worker named Mike Stubbs that RBA Staffing sent to the defendant's job site at the Metropolitan was sent there by RBA Staffing from the very beginning of the project, which has been for more than two years now and as of the filing of this civil action Mike Stubbs is going on his third year working at the defendant's job site at the Metropolitan as of May of 2018.

76. The Plaintiff had an excellent attendance record working at the defendant's job site at the Metropolitan, and therefore the Plaintiff never received any warnings from Brett Gaurette either written or verbal about the Plaintiff's attendance. Nor did either the defendant or RBA Staffing ever receive any complaints written or verbal from Brett Gaurette complaining about the Plaintiff's work attendance.

77. The defendant cannot say the same for Mike Stubbs who the defendant almost fired at one point due to a very poor attendance record, amongst other things, that were discovered by the defendant from the time sheets that the temporary agency construction laborers filled out.

78. Specifically, the defendant learned of Mike Stubbs' poor attendance from observing the time sheets that the temporary agency construction laborers were submitting every week. In fact, Brett Gaurette stated that the defendant asked him "why is Jason the only one turning in time sheets with 40 hours every week?". Mike Stubbs' poor attendance was not the only factor in his almost being fired by the defendant, but also because of preferential treatment showed to Mike Stubbs by Brett Gaurette.

79. For example, the defendant had discovered from observation that for several months Brett Gaurette had been allowing Mike Stubbs to leave work 45 minutes earlier, with pay, than myself and the other construction laborers working there at the time before the defendant put a stop to it.

16.

80. The defendant also discovered from observation that for several months Brett Gaurette had also been allowing Mike Stubbs to leave for lunch a half hour sooner than the rest of the construction laborers on Fridays, and return from lunch a half hour later than the other construction laborers working there at the time, with pay.

81. In addition to having an excellent attendance record, the Plaintiff was never late reporting for work at the defendants job site at the Metropolitan which is confirmed from the fact that Brett Gaurette never issued any warnings, verbal or written, to the Plaintiff about tardiness. Nor did Brett Gaurette ever lodge any complaints about the Plaintiff being tardy with either the defendant, or with RBA Staffing.

82. Facts that I have already recited herein show that Brett Gaurette never lodged any written or verbal complaints with the defendant or RBA Staffing alleging that the Plaintiff was stealing prior to June 30th, 2017. Likewise, the facts that I have already recited herein also show that Brett Gaurette never lodged any complaints with either the defendant or with RBA Staffing alleging that the Plaintiff was smoking inside of the Metropolitan prior to June 30th, 2017.

83. The aforementioned facts that have been recited by the Plaintiff show that RBA Staffing itself, had no reason to end my assignment with wither RBA Staffing or with the defendant.

84. Therefore, based on the aforementioned information that the Plaintiff has recited, the Plaintiff believes that the facts show that on or about July 28, 2017, that the defendant told RBA Staffing to provide DSS with the statement alleging that I am no longer employed with them because my assignment had ended which the defendant could use as a pretext to cover up that the real reasons for the Plaintiff's termination by Brett Gaurette from the defendants job site at the Metropolitan was because of racism and employment discrimination based on my criminal record.

17.

85. Unless RBA Staffing is itself making an admission to a racially motivated discriminatory employment practice towards the Plaintiff by treating my terms of being employed at the defendant's job site at the Metropolitan differently from the same identical terms as the caucasian Mike Stubbs' terms of being assigned at the defendant's job site at the Metropolitan, the facts show that RBA Staffing's termination of the Plaintiff's employment with them was not because RBA Staffing had ended the Plaintiff's assignment at the defendants job site at the Metropolitan.

86. In summary, based on the information that has been recited by the Plaintiff in the aforementioned paragraphs... the Plaintiff believes that the facts show that RBA Staffing granted the defendants request to falsely state in the letter to DSS that I was no longer employed with RBA Staffing because my assignment had ended that the defendant could use as a pretext to conceal that the defendant acquiesced in Brett Gaurette's pretext per se slanderous allegations,  and also in Brett Gaurette's pretext intentional, negligent, and malicious slanderous allegations to conceal that Brett Guarette's actions towards the Plaintiff were based on racial discrimination, and employment discrimination because I have a criminal record.  .

### FIRST CAUSE OF ACTION
### (Racial Discrimination in violation of Title VII of the
### Civil Rights Act of 1964, 42 U.S.C. 2000, et. seq.)

87.  The foregoing paragraphs are re alleged and incorporated by reference herein.

88.  By the actions detailed above, among others, the defendant has been discriminated against the Plaintiff because of my race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et. seq, by subjecting the Plaintiff to a  hostile workplace environment because of my race.

18.

89. As a direct and proximate result of Defendants' unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et. Seq, the Plaintiff has suffered and continues to suffer, monetary and/or economic harm, for which I am entitled to an award of damages.

90. As a direct and proximate result of unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et. Seq; the Plaintiff has suffered, and continues to suffer, mental anguish and emotional distress, for which the Plaintiff is entitled to an award of damages.

91. Defendants' unlawful and discriminatory action against the Plaintiff constitutes malicious, willful and wanton violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et. Seq, for which the Plaintiff is entitled to an award of damages.

## SECOND CAUSE OF ACTION
### Wrongful Termination in violation of Title VII of the
### Civil Rights Act of 1964, 42 U.S.C. 2000, et, seq.

92. The foregoing paragraphs are reallged and incorporated by reference herein.

93. By the actions detailed above,  among others, the Plaintiff was wrongfully terminated by the defendant because of my race, and also because of  my criminal record,  in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et; seq.

94. As a direct and proximate cause of the defendant's unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et. Seq; the Plaintiff has suffered and continues to suffer, monetary and/or economic harm, for which I am entitled to an award of damages.

19.

95. As a direct and proximate cause of the defendant's unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et. seq; the Plaintiff has suffered and continues to suffer, mental anguish and emotional distress, for which I am entitled to an award of damages.

96. Defendant's unlawful and discriminatory actions against the Plaintiff constitutes malicious, willful, and wanton acts against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et. seq; for which the Plaintiff is entitled to an award of damages.

### Third Cause of Action
### Employment Discrimination in violation
### of Title VII of the Civil Rights Act of 1964
### 42 U.S.C. 2000, et. seq.

97. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

98. By the actions detailed above, among others, the defendant has discriminated against the plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et. seq; because the Plaintiff was terminated by the defendant from its job site its at the Metropolitan based on the Plaintiff's criminal record.

99. As a direct and proximate result of the defendant's unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000, et. seq. plaintiff has suffered and continues to suffer monetary and/or economic harm for which the Plaintiff is entitled an award of damages.

20.

100.  As a direct and proximate result of the defendant's unlawful and discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. et. seq. the plaintiff has suffered and continues to suffer mental anguish and emotional distress to which I am entitled an award of damages.

101.  Defendant's unlawful and discriminatory actions against the Plaintiff constitutes malicious, willful, and wanton acts against the Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 et. seq, for which the Plaintiff is entitled to an award of damages.

## Fourth Cause of Action
### Racial Discrimination in violation of NYSHRL

102.  Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

103.  By the actions detailed above, among others, the defendant has discriminated against the Plaintiff in violation of the NYSHRL by, *inter alia,* denying the Plaintiff the equal terms and conditions of employment as the white temporary agency construction laborer Mike Stubbs, and subjecting me to a hostile work environment based on the Plaintiff's race and criminal record.

104.  As a direct and proximate result of the defendant's unlawful discriminatory conduct in violation of the NYSHRL, the Plaintiff has suffered, and continues to suffer monetary, and/or economic harm the Plaintiff is entitled to an award for damages.

105.  As a direct and proximate result of the defendant's unlawful discriminatory conduct in violation of the NYSHRL, the Plaintiff has suffered, and continues to suffer mental anguish and emotional distress for which the Plaintiff is entitled to an award for damages.

21.

## Fifth Cause of Action
## Employment Discrimination in violation of NYSHRL

106. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

107. By the actions detailed above, among others, the defendant has discriminated against the Plaintiff in violation of the NYSHRL by, *inter alia,* denying me the equal terms and conditions of employment as the white temporary agency construction laborer, Mike Stubbs, because of the Plaintiff's criminal record.

108. As a direct and proximate result of the defendant's discriminatory conduct in violation of the NYSHRL, the Plaintiff has suffered, and continues to suffer, monetary and/or economic harm for which the Plaintiff is entitled to an award of damages.

109. As a direct and proximate result of the defendant's discriminatory conduct in violation of the NYSHRL, the Plaintiff has suffered and continues to suffer mental anguish and emotional distress for which the Plaintiff is entitled to an award of damages.

## Sixth Cause of Action
## Per Se Slander

110. Plaintiff hereby repeats, reiterates, and re-alleges each and every allegation in each of the preceding paragraphs as if fully set forth herein.

111. By asking RBA Staffing to falsely claim that the Plaintiff was terminated from employment with RBA Staffing because the Plaintiff's assignment had ended, the facts show that the defendant did so in order to conceal that the defendant had told RBA Staffing that Brett Gaurette terminated the Plaintiff from the defendant's job site at the Metropolitan for stealing.

22.

112. The aforesaid per se slanderous statement made by the defendant was and is false and was not privileged. Defendant made said statement to RBA Staffing knowing the falsity thereof and without using reasonable care to determine the truth of or falsity thereof.

113. The defendant made the aforesaid per se slanderous false statement with intentional and deliberate negligence, and with intentional malice , with the intent to injure the Plaintiff's good name and reputation and to interfere with the Plaintiff's ability to remain employed with RBA Staffing in that the defendant harbored discriminatory racist ill-will toward the Plaintiff based on the Plaintiff's race, discriminatory ill-will toward the Plaintiff based on the Plaintiff's criminal record, discriminatory ill-will toward the Plaintiff based on the per se slanderous and false belief that the Plaintiff was stealing food from the contractors.

114. The aforesaid per se slanderous false and unprivileged statement has harmed the Plaintiff's reputation with RBA Staffing, because such statement has a tendency to injure, has in fact injured the Plaintiff's reputation with RBA Staffing and has in fact injured the Plaintiff in his occupation as an employee with RBA Staffing, and his future employment prospects with RBA Staffing has been severely harmed because RBA Staffing has terminated the Plaintiff as a result of acquiescing and believing the defendant's per se slanderous false allegation that the Plaintiff was stealing food from the white contractors.

## Seventh Cause of Action.
### Intentional Infliction of Emotional Distress

115. The Plaintiff repeats, reiterates, re-alleges and incorporates by reference that allegations in paragraphs 108 to 112 shows with the same force and effect as if herein set forth.

23.

116. Defendants negligently, intentionally and deliberately with malice, inflicted emotional distress on the Plaintiff by making per se slanderous false allegations about the Plaintiff to the Plaintiff's employer RBA Staffing on or about July 28, 2017, alleging that the Plaintiff was terminated from the defendants job site at the Metropolitan for stealing as a pretext to conceal that the defendants true reason for terminating the Plaintiff from its job site at the Metropolitan were based on racial discrimination, and employment discrimination because the Plaintiff has a criminal record.

117. As a direct and proximate cause of the defendant's extreme and outrageous conduct, the Plaintiff was, is with a high degree of likelihood, will continue to be emotionally distressed due to the defendants intentional, deliberate, negligent, and malicious per se slanderous false statements to RBA Staffing about the Plaintiff.

118. As a direct and proximate cause of the defendant's extreme and outrageous conduct, the Plaintiff has suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

## Eighth Cause Of Action
## Negligent Infliction Of Emotional Distress

119. The Plaintiff repeats, reiterates, re-alleges, and incorporates by reference that allegations in paragraphs 108 to 112 with the same force and effect as if herein set forth:

120. The defendants negligently and intentionally, deliberately, and with malice, negligently inflicted emotional distress on the Plaintiff by per se slanderous false statements about the Plaintiff to the Plaintiff's then employer RBA Staffing on or about July 28, 2017, alleging that the Plaintiff was terminated by the defendant from its job site at the Metropolitan for stealing as a pretext to conceal that the defendants true reason for terminating the Plaintiff from its job site at the Metropolitan were based on racial discrimination, and employment discrimination because the Plaintiff has a criminal record.

24.

121. As a direct and proximate cause of the defendant's extreme and outrageous conduct, the Plaintiff has suffered and will continue to suffer mental pain and anguish, severe emotional trauma, embarrassment, and humiliation.

## PRAYER FOR RELIEF

Plaintiff prays for relief as follows:

1) For economic damages, to be proven at trial.
2) For general and compensatory damages, to be proven at trial.
3) For exemplary and punitive damages to be proven at trial.
4) For interest on all sums awarded at the maximum allowable rate.
5) For such other and further relief as the Court may deem just and proper.

## Ninth Cause of Action
### Slander

122. The Plaintiff hereby repeats, re iterates, re alleges and incorporates by reference that allegations in paragraphs 114-131 shows with the same force and effect as if herein set forth.

123. The defendant intentionally, deliberately, negligently, and with malice inflicted emotional distress on the Plaintiff by making false statements about the Plaintiff to the Plaintiff's employer RBA Staffing as a pretext to conceal that the defendant's true reasons for terminating the Plaintiff from its job site at the Metropolitan were based on racial discrimination, and employment discrimination because I have a criminal record.

25.

124. As a direct and proximate cause of the defendants extreme, malicious, and outrageous conduct the Plaintiff was, and with a high degree of likelihood, will continue to be emotionally distressed due to the defendants intentional, deliberate, negligent, and malicious slanderous statements to RBA Staffing about the Plaintiff.

125. As a direct and proximate cause of the defendants extreme, malicious, and outrageous conduct the Plaintiff was, and with a high degree of likelihood, will continue to be emotionally distressed due to the defendants intentional, deliberate, negligent, and malicious slanderous statements to the Plaintiff's then employer,  RBA Staffing about the Plaintiff.

## **PRAYER FOR RELIEF**

Plaintiff prays for relief as follows:
   (1) For economic damages , to be proven at trial
   (2) For general and compensatory damages,  to be proven at trial
   (3) For exemplary and punitive damages to be proven at trial
   (4) For interest on all sums awarded at the maximum allowable rate
   (5) For other and such further relief as the Court may deem just and proper.

Dated: 5/20/18

26.

## VERIFICATION

Jason Balkum, being duly sworn, deposes and says:

I am the Plaintiff in the above entitled action. I have read the foregoing Complaint and know the contents thereof. The same are true to my knowledge, accept as to matters therein stated to be alleged on information and belief and as to those matters, I believe them to be true.

Jason Y. Balkum   3/20/18

**Sworn to before me this**
20 **day of** March      , **2018.**

27.

IRWIN H. HARRIS
Notary Public. State of New York
Qualified in Monroe County
My Commission expires _____ 2-4- 22

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

# DISMISSAL AND NOTICE OF RIGHTS

To:   **Jason T. Balkum**
      **468 Tremont Street**
      **Rochester, NY 14608**

From:   **Buffalo Local Office**
        **6 Fountain Plaza**
        **Suite 350**
        **Buffalo, NY 14202**

☐  On behalf of person(s) aggrieved whose identity is
   CONFIDENTIAL (29 CFR §1601.7(a))

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **525-2017-00763** | **Beth Anne Breneman,**<br>**Investigator Support Assistant** | **(716) 551-4444** |

## THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed <u>WITHIN 90 DAYS</u> of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred <u>more than 2 years (3 years)</u> before you file suit may not be collectible.**

On behalf of the Commission

*John E. Thompson*

**John E. Thompson,**
**Local Office Director**

DEC 2 1 2017

Enclosures(s)

*(Date Mailed)*

cc:   **Andrew Gallina**
      **President**
      **GALLINA DEVELOPMENT CORPORATION**
      **1890 South Winton Road, Site 100**
      **Rochester, NY 14618**



# RBA STAFFING
## a division of

# GREATER ROCHESTER
### Chamber of Commerce

July 28, 2017

To whom it may concern;

This letter is in regards to Jason Balkum's (social security number 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) employment through our agency. His assignment has unfortunately come to an end as of June 30, 2017 and is currently not working through our agency.

Please feel free to contact me with any further questions or concerns in this matter.

Sincerely,

Megan Baldino
Office Administrator
RBA Staffing
150 State Street
Rochester, NY 14614
(585) 256-4630

Human Services
AUG 0 1 2017
Reception

150 State Street, Suite 400 Rochester, NY  14614-130 **Phone:** (585) 244-1800 **Fax:** (585) 482-1743 www.RBAStaffing.com

18 CV 6229 CJS

MAR 20 2018

JS 44  (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

Jason Balkum

**DEFENDANTS**

Gallina Development Corp.

**(b)** County of Residence of First Listed Plaintiff    Monroe
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    Monroe
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Jason Balkum, Pro Se  (585) 351-1897
468 Tremont St.
Rochester, N.Y. 14608

Attorneys *(If Known)*

Unknown

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government
    Plaintiff
- ☐ 3  Federal Question
    *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government
    Defendant
- ☐ 4  Diversity
    *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)*                              *and One Box for Defendant)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 376 Qui Tam (31 USC |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | 3729(a)) |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 400 State Reapportionment |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 835 Patent - Abbreviated | ☐ 460 Deportation |
| Student Loans | ☐ 340 Marine | Injury Product | | New Drug Application | ☐ 470 Racketeer Influenced and |
| (Excludes Veterans) | ☐ 345 Marine Product | Liability | | ☐ 840 Trademark | Corrupt Organizations |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ |
| ☐ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 720 Labor/Management | ☐ 863 DIWC/DIWW (405(g)) | Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | Relations | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | ☐ 740 Railway Labor Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 751 Family and Medical | | ☐ 893 Environmental Matters |
| | Medical Malpractice | | Leave Act | | ☐ 895 Freedom of Information |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | **FEDERAL TAX SUITS** | Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement | ☐ 870 Taxes (U.S. Plaintiff | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | Income Security Act | or Defendant) | ☐ 899 Administrative Procedure |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment | ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | Act/Review or Appeal of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | Sentence | | 26 USC 7609 | Agency Decision |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 535 Death Penalty | **IMMIGRATION** | | State Statutes |
| | Employment | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other | ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - | | | |
| | | Conditions of | | | |
| | | Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1  Original
    Proceeding
- ☐ 2  Removed from
    State Court
- ☐ 3  Remanded from
    Appellate Court
- ☐ 4  Reinstated or
    Reopened
- ☐ 5  Transferred from
    Another District
    *(specify)*
- ☐ 6  Multidistrict
    Litigation -
    Transfer
- ☐ 8  Multidistrict
    Litigation -
    Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
Title VII of the Civil/Right Act of 1964,  42 U.S.C. Section 2000, et. Seq.
Brief description of cause:
Employment discrimination

**VII. REQUESTED IN
COMPLAINT:**

☐  CHECK IF THIS IS A CLASS ACTION
UNDER RULE 23, F.R.Cv.P.

DEMAND $  $ 25,000 dollars

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

**VIII. RELATED CASE(S)
IF ANY**

*(See instructions:)*

JUDGE

DOCKET NUMBER

DATE

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #           AMOUNT           APPLYING IFP           JUDGE           MAG. JUDGE